LEWERENCE JONES                                CIVIL ACTION

VERSUS                                         NO: 17-8076

SEWERAGE & WATER BOARD OF                      SECTION: "J" (3)
NEW ORLEANS

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 17)** filed by
Defendant, Sewerage & Water Board of New Orleans ("Defendant"), an opposition
thereto **(Rec. Doc. 20)** filed by Plaintiff, Lewerence Jones ("Plaintiff"), and a reply
memorandum **(Rec. Doc. 25)** filed by Defendant. Having considered the motion and
legal memoranda, the record, and the applicable law, the Court finds that the motion
should be **GRANTED**.

## FACTS AND PROCEDURAL HISTORY

This litigation derives from Plaintiff's allegations that his former employer,
Defendant, violated the Americans with Disabilities Act ("ADA") when it terminated
Plaintiff's employment. Plaintiff is HIV positive and his medical records indicate that
prior to his employment with Defendant, Plaintiff was diagnosed with acute systolic
heart failure, congestive heart failure, and atrial fibrillation.

Prior to being hired by Defendant, Plaintiff had a physical examination and
completed a medical questionnaire with the assistance of a nurse. The medical

questionnaire states that falsification may be grounds for termination. Although Plaintiff's form indicated that he did not take prescription medication and had never been hospitalized, Plaintiff subsequently conceded in the course of this litigation that this information was false.

On May 16, 2016, Plaintiff began working as an outdoor laborer for Defendant. On November 14, 2016—the last day that Plaintiff performed work for Defendant—Foreman Myron Ester received a report that Plaintiff had complained of chest pain. Plaintiff did not perform work that day and was instructed to obtain a note from a medical doctor in order to return to work. Plaintiff visited CrescentCare on November 30, 2016, but he did not obtain a return-to-work note until his visit to CrescentCare on December 6, 2016. Given that at the time Plaintiff produced the December 6, 2016 note he had been absent from work for more than seven days and the note did not address Plaintiff's cardiac fitness, Defendant required Plaintiff to obtain a note from a cardiologist to demonstrate his fitness for duty before returning to work.

Approximately one month later on January 5, 2017, Defendant issued a Notice of Pre-Termination Hearing to Plaintiff, citing his inconsistent attendance and failure to report to work since November 14, 2016. Plaintiff appeared at the pre-termination hearing on January 11, 2017. Despite having obtained a note dated January 9, 2017 from Dr. Atluri of UMCNO's Cardiology Center stating that Plaintiff could return to work without restrictions, the record shows that Plaintiff did not present the note at the time of the hearing or thereafter, and it was produced only during discovery in this case.

On January 18, 2017, Defendant issued a letter advising Plaintiff that his employment had been terminated effective as of that date. The reason provided for the termination was Plaintiff's inconsistent attendance throughout his employment with Defendant and his abandonment of the position. Specifically, Plaintiff had more than forty unauthorized absences from work between May 2016 and November 2016.[1] Plaintiff subsequently sought and was awarded Social Security disability benefits. On his Social Security paperwork, Plaintiff indicated that he "stopped working" for Defendant because of his "physical and/or mental condition(s)."

Thereafter, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant. On June 16, 2017, the EEOC closed the file[2] and issued a right to sue letter. On August 21, 2017, Plaintiff sued Defendant in federal court. On September 11, 2018, Defendant filed the instant *Motion for Summary Judgment*, which Plaintiff opposes.

## PARTIES' ARGUMENTS

### I.  Movant's Arguments

Defendant contends that it is entitled to summary judgment because Plaintiff failed to exhaust administrative remedies and, even if he had, the undisputed facts show that Plaintiff cannot sustain a claim for disability discrimination as a matter of law. (Rec. Doc. 17-1, at 1). In support of its argument that Plaintiff failed to exhaust

---

[1] May 2016 (1 day); June 2016 (5 days); July 2016 (6 days); august 2016 (10 days); September 2016 (3 days); October 2016 (9 days); November 2016 (12 days). (Rec. Doc. 25-1, at 3).

[2] The record reflects that the file on this charge was closed for the following reason: "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge." (Rec. Doc. 17-20).

administrative remedies, Defendant notes that Plaintiff's EEOC file contains only an incomplete, unsigned EEOC charge. (Rec. Doc. 17-1, at 8). Accordingly, Defendant argues that Plaintiff did not exhaust his administrative remedies and this Court lacks jurisdiction over his claim. (Rec. Doc. 17-1, at 10).

Defendant next argues that Plaintiff's ADA claim is not actionable because Plaintiff cannot make out the requisite elements of his *prima facie* case. (Rec. Doc. 17-1, at 10). Specifically, Defendant asserts that Plaintiff (1) was not qualified for the position at issue given his medical history; (2) was not subjected to an adverse employment action on account of his disability given his sworn statement to the Social Security Administration that he "stopped working" for Defendant due to his "physical and/or mental condition(s)"; and (3) was not replaced by or treated less favorably than non-disabled employees. (Rec. Doc. 17-1, at 10-11). Defendant asserts that even if Plaintiff could make out his *prima facie* case, he cannot overcome Defendant's legitimate non-discriminatory reason for his discharge. (Rec. Doc. 17-1, at 12). Specifically, Defendant avers that it terminated Plaintiff's employment because of his inconsistent attendance.[3] (Rec. Doc. 17-1, at 12).

Finally, Defendant argues that even if Plaintiff could recover for alleged disability discrimination, his damages and relief would be limited because Defendant learned that Plaintiff intentionally provided false statements regarding his medical history in his pre-hire documentation. (Rec. Doc. 17-1, at 13). Accordingly, Defendant

---

[3] Defendant notes that Plaintiff had more than forty unauthorized absences from May 2016 through November 2016, and he failed to return to work after November 14, 2016. (Rec. Doc. 17-1, at 12).

argues that Plaintiff's claims for front pay and/or reinstatement should be denied, and any claim for back pay should be limited. (Rec. Doc. 17-1, at 13).

## II.    Plaintiff's Arguments in Opposition

Plaintiff opposes the motion for summary judgment on three grounds. (Rec. Doc. 20). First, Plaintiff argues that he fully cooperated with the EEOC in order to exhaust his administrative remedy. (Rec. Doc. 20, at 3-5). While Plaintiff acknowledges that he did not sign his statement, he asserts that his attorney signed a Third Party Certification Charge on his behalf. (Rec. Doc. 20, at 3). Next, Plaintiff argues that Defendant's four-part test for employment discrimination claims under the ADA is incorrect, as the Fifth Circuit applies a three-part test, which Plaintiff argues he satisfies. (Rec. Doc. 20, at 5). Specifically, Plaintiff asserts that he has a disability, he was qualified for the position at issue, and an adverse employment decision was made because of his disability. (Rec. Doc. 20, at 6-9). Plaintiff also argues that Defendant violated the ADA by requiring Plaintiff to provide fitness for duty medical documentation to return to work. Finally, Plaintiff asserts that he is not required to overcome Defendant's proffered reason for his termination at this stage of the litigation, as any burden upon him will be borne at trial. (Rec. Doc. 20, at 9).

## III.   Movant's Arguments in Reply

Defendant argues that summary judgment is proper in this case because Plaintiff has failed to create genuine issues of material fact. (Rec. Doc. 25, at 1). First, Defendant asserts that Plaintiff's Third-Party Certification cannot salvage his deficient EEOC charge because seven days after the EEOC received the certification,

the EEOC sent Plaintiff a charge for his signature. (Rec. Doc. 25, at 2). Given that the EEOC requires a signature, Plaintiff did not sign the charge, and Plaintiff has put forth no summary judgment evidence that he did not receive the charge, Defendant argues it is entitled to summary judgment due to Plaintiff's failure to exhaust administrative remedies. (Rec. Doc. 25, at 3).

Second, Defendant asserts that Plaintiff's opposition cites no authority for the proposition that Defendant cannot require fitness for duty medical documentation for employees on prolonged absences or for whom a safety concern is at issue. (Rec. Doc. 25, at 4). Defendant avers that the record reflects that Plaintiff did not produce the January 9, 2017 fitness for duty note until discovery in this case, and Plaintiff's assertion that his "recollection can be refreshed at trial" regarding what he did with the note is not sufficient to survive summary judgment. (Rec. Doc. 25, at 5). Similarly, Defendant argues that its request for medical documentation following Plaintiff's complaint of chest pain at work did not violate the ADA. (Rec. Doc. 25, at 5).

Third, Defendant argues that Plaintiff's ADA claim fails under a three or four-part test, emphasizing that the Fifth Circuit continues to utilize the four-part test referenced in Defendant's memorandum in support of its motion. (Rec. Doc. 25, at 6). Defendant argues that even if this Court applies the three-part test, Plaintiff has failed to present summary judgment evidence that (1) he was qualified for the position at issue in light of his sworn statement to the Social Security Administration that he "stopped working" due to his "physical and/or mental condition(s);" and (2) an adverse employment decision was made on the basis of Plaintiff's disability given that

Plaintiff's statement that he was "prevented from returning to work" directly conflicts with his sworn statement to the Social Security Administration. (Rec. Doc. 25, at 8). Defendant also argues that Plaintiff failed to rebut Defendant's legitimate non-discriminatory reason for Plaintiff's termination. (Rec. Doc. 25, at 9).

Finally, Defendant argues that Plaintiff failed to oppose or address Defendant's after-acquired evidence argument, rendering summary judgment on this issue appropriate. (Rec. Doc. 25, at 10).

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### I. Whether Plaintiff Failed to Exhaust Administrative Remedies

Plaintiffs alleging employment discrimination must exhaust administrative remedies before raising claims in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id*; *Dao v.*

*Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996). Although filing an EEOC charge is not a jurisdictional prerequisite, it "is a precondition to filing suit in district court." *Dao*, 96 F.3d at 789. A discrimination charge must be filed "in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b).

"The ADA incorporates by reference the procedures for exhaustion applicable to claims under Title VII." *Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 709 (E.D. La. 2013). In the context of Title VII, the EEOC's regulations require that a charge be in writing, signed, and verified. 29 CFR § 1601.9. However, the ADA does not require verification. *See* 29 U.S.C. § 626(d); 29 CFR § 1626.6. A plaintiff is not necessarily barred from bringing suit on a charge that is unsigned or unverified. *Ragland v. Dallas Cty. Cmty. Coll. Dist.*, No. 3:16-CV-722-L, 2017 WL 1196863, at *4 (N.D. Tex. Mar. 31, 2017). The EEOC may waive the requirement that a charge be signed and verified. C*rawford v. Harris Cty. Juvenile Prob. Dep't*, 31 Fed.Appx. 159 n.6 (5th Cir. 2001) (internal citations omitted). "[A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

The Fifth Circuit has cautioned that charges of employment discrimination must be construed "with the utmost liberality, bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982) (internal citations omitted). With this precept

in mind, the Fifth Circuit in *Price* reversed the district court's grant of summary judgment where the plaintiff failed to submit a signed and sworn charge. *Id.* at 78. The Court emphasized that "the crucial element of a charge of discrimination is the factual statement contained therein." *Id.* The Court concluded that although the form was neither signed nor sworn, it was timely filed and "informed the EEOC of the identity of the parties and described the alleged discriminatory conduct in enough detail to enable it to issue an official notice of charge to [Defendant], thus setting the administrative machinery in motion." *Id.*

Here, there is no dispute that Plaintiff filed a timely charge with the EEOC and received a statutory notice of right to sue before filing the instant lawsuit. The issue is whether Plaintiff's unsigned charge of discrimination was sufficient to exhaust administrative remedies prior to the commencement of litigation in federal court. Following the reasoning of *Price* and the language of 29 C.F.R. § 1601.12(b), the Court finds that Plaintiff exhausted administrative remedies before filing suit in federal court. Plaintiff's charge is sufficiently precise to identify the parties and describe generally the action or practices of which Plaintiff complains. Specifically, Plaintiff alleges in his charge that he was sent home from work by a supervisor after a co-worker reported that Plaintiff was experiencing chest pains. (Rec. Doc. 17-17). He describes his efforts to obtain documentation sufficient to return to work for Defendant and his subsequent termination. (Rec. Doc. 17-17). Although the charge is not signed, it describes the alleged discriminatory conduct in detail sufficient to enable the EEOC to issue an official notice of charge to Defendant. While there is no

reference to a notice of charge in the record, it appears that Defendant was aware of Plaintiff's EEOC charge in light of the message sent to the EEOC by Veronica Washington, Defendant's Utility Services Manager, requesting a status update on Plaintiff's charge on November 30, 2017. (*See* Rec. Doc. 17-19).

## II.     Whether Plaintiff's ADA Claim is Actionable

The ADA prohibits discrimination by an employer against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. § 12112(a). An employee alleging discriminatory termination under the ADA may present direct or circumstantial evidence that he was discriminated against on the basis of his disability. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Where the employee lacks direct evidence of discrimination, he must proceed under the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that analysis, the plaintiff must first establish a prima facie case of discrimination. *See E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). If the plaintiff is successful, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. *See id*. Finally, the burden shifts back to the plaintiff to prove that the defendant's proffered reason is pretextual. *See id*. "In the Rule 56 context, a prima facie case of discrimination plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment." *E.E.O.C.*, 773 F.3d at 694.

To establish a prima facie case of discrimination under the ADA, a plaintiff must establish that: (1) he has a disability;[4] (2) he was qualified for the job in question; and (3) he suffered an adverse employment decision because of his disability. *Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 836 (5th Cir. 1999); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999).

A disabled individual is qualified for the job in question if, *inter alia*, he can perform the essential functions of the job with or without reasonable accommodation. *Gonzales*, 176 F.3d at 837 (citations omitted). "To avoid summary judgment on whether he is a qualified individual, [Plaintiff] needs to show 1) that he could perform the essential functions of the job in spite of his disability or 2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." *Turco v. Hoechst Celanese Chem. Grp., Inc.*, 101 F.3d 1090, 1093 (5th Cir. 1996) (alterations added). "'Essential functions' are those duties that are fundamental to the job at issue"; the term does not include the marginal functions of the position. *Kapche v. City of San Antonio*, 176 F.3d 840, 843 (5th Cir.1999); 29 C.F.R. § 1630.2(n)(1). The EEOC implementing regulations provide that "[a] job function may be considered essential if, for example, "the reason the position exists is to perform that function." *Id*; § 1630.2(n)(2)(i). "To aid in the determination of whether a function is essential, a court may consider evidence of a variety of factors including, but not limited to, (1) the employer's judgment as to which functions are

[4] Defendant offers no evidence to show that Plaintiff does not have a disability within the meaning of the ADA given that Plaintiff has been diagnosed with HIV. 29 C.F.R. § 1630.2(j)(2)-(3) lists HIV as one of the conditions that virtually always will substantially limit major life activity.

essential, (2) written job descriptions prepared before advertising or interviewing applicants for the job, (3) the amount of time spent on the job performing the function, and (4) the work experience of both past and current employees in the job." *Kapche*, 176 F.3d at 843.

Here, the only evidence with respect to the "essential functions" of an outdoor laborer is the job description provided by Defendant. Plaintiff's job duties included cutting grass, using weed-eaters, and cleaning up outdoors as needed. (Rec. Doc. 17-1, at 3). Plaintiff asserted that the work environment was "very hot." (Rec. Doc. 17-2, at 10). His work as a laborer required "strenuous activity outdoors". (Rec. Doc. 25, at 3). Thus, these are essential functions. Rather than offer summary judgment evidence to contest Defendant's assertion that Plaintiff's cardiac issues[5] which he concealed from Defendant made him unqualified for the position at issue, Plaintiff simply stated that "[Defendant] offered no facts whatsoever to support a position that [Plaintiff] is incapable of performing the essential functions of a laborer and cannot do so." (Rec. Doc. 20, at 8). Accordingly, because Defendant offered evidence to show that Plaintiff was not qualified for the position due to his cardiac issues and Plaintiff produced no evidence to the contrary, Plaintiff has failed to show that he satisfies the second element of his prima facie case.

Even if Plaintiff were able to prove his qualification for the position in question, he is unable to show that he suffered an adverse employment decision because of his disability. It is clear that Plaintiff suffered an adverse employment action—namely,

---

[5] Plaintiff's medical records indicate that he was diagnosed with acute systolic heart failure, congestive heart failure, and atrial fibrillation prior to his employment with Defendant. (Rec. Doc. 17-1, at 2-3).

termination. However, Plaintiff has failed to present summary judgment evidence that he was terminated because of his disability. Defendant contends that Plaintiff was terminated due to his inconsistent attendance at work. Plaintiff had more than forty unauthorized absences between May 2016 and November 2016. (Rec. Doc. 17-28, at 1-2). Plaintiff produced no evidence to controvert this. (*See* Rec. Doc. 25-1, at 3). Moreover, Plaintiff produced no evidence to show that he was terminated because of his disability. In Plaintiff's sworn statement to the Social Security Administration, Plaintiff stated that he "stopped working" for Defendant due to his "physical and/or mental condition(s)." (Rec. Doc. 17-23, at 9). Specifically, Plaintiff indicated that he "became disabled on 02/01/2016 because of Congestive heart failure." (Rec. Doc. 17-23, at 1). Accordingly, Plaintiff has failed to show that he suffered an adverse employment decision because of his disability.

Because Plaintiff has failed to make a prima facie case of discrimination, the burden does not shift to Defendant to articulate a legitimate reason for its actions. However, if Plaintiff had succeeded in making a prima facie case, Defendant has proffered a legitimate reason for terminating Plaintiff on the basis of his inconsistent attendance at work. "Terminating an employee whose performance is unsatisfactory according to management's business judgment is legitimate and nondiscriminatory as a matter of law." *E.E.O.C.*, 773 F.3d at 701-02. Accordingly, Defendant has offered a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

Plaintiff, however, would be unable to satisfy his burden of showing that Defendant's proffered reason is pretextual or that Plaintiff was terminated due to his

inconsistent attendance and on the basis of his disability. "At summary judgment, '[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive.'" *E.E.O.C.*, 773 F.3D AT 702 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Here, Plaintiff has failed to make his prima facie case and has offered no summary judgment evidence to show that his termination for inconsistent attendance was merely a pretext. Moreover, nothing in the record supports the inference that discrimination was a motivating factor in Plaintiff's termination. Accordingly, summary judgment in favor of Defendant is appropriate.

### III. Whether Defendant Violated the ADA by Requiring Plaintiff to Provide Medical Documentation

Section 12112(d)(4)(A) of the ADA provides that "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). While deference is generally given to a treating physician's opinions, EEOC enforcement guidance provides that medical documentation may be insufficient where "the health care professional does not have the expertise to give an opinion about the employee's medical condition."[6]

---

[6] Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA), https://www.eeoc.gov/policy/docs/guidance-inquiries.html (last visited October 10, 2018).

"Relatively few courts have addressed either [Section 12112(d)(4)(A)] or the related subsections involving preemployment inquiries and employment entrance examinations." *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir.2003). The employer bears the burden of demonstrating business necessity. *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir.2010) (citing *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir.2007); *Conroy*, 333 F.3d at 97). Although it appears that the Fifth Circuit has never construed Section 12112(d)(4)(A), the Second Circuit has observed:

> The case law on inquiries directed toward individual employees thus demonstrates that courts will readily find a business necessity if an employer can demonstrate that a medical examination or inquiry is necessary to determine 1) whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties (such as frequent absences or a known disability that had previously affected the employee's work) ...

*Id*. at 98; *Brownfield*, 612 F.3d at 1146 (business exception applies before employee's work performance declines if the employer is faced with "significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job.") (internal citations omitted); *Yin v. State of California*, 95 F.3d 864, 868 (9th Cir.1996) (business necessity exception applicable at summary judgment where employer showed, based on employee's excessive absenteeism and declined productivity, that "health problems have had a substantial and injurious impact on an employee's job performance.")

Based on *Brownfield* and *Yin*, the Court finds that Defendant has presented sufficient evidence that a legitimate, non-discriminatory reason to doubt Plaintiff's

capacity to perform his duties existed at the time Defendant required the fitness for duty documentation. Defendant has presented uncontroverted evidence that Plaintiff performed strenuous labor outdoors in very hot conditions. (Rec. Doc. 25, at 3). Thus, the report that Plaintiff experienced chest pains at work was a "safety concern." (Rec. Doc. 17-24, at 2). Plaintiff took more than twenty days to return to Defendant with a note that made no mention of the underlying cardiac episode that necessitated the medical documentation. (*See* Rec. Doc. 17-9). Because Plaintiff had been absent from work for more than seven days when he produced the note and there was a safety concern at issue, Defendant required Plaintiff to obtain a note specifically addressing his cardiac fitness in light of his reported complaint of chest pains. (Rec. Doc. 17-11). Although Plaintiff obtained a note from a cardiologist on January 9, 2017, he did not produce it at the January 11, 2017 hearing, and he was subsequently terminated. (Rec. Doc. 25, at 4). Plaintiff has presented no summary judgment evidence that his treating physician had the expertise to provide an opinion on Plaintiff's cardiac issues. Defendant's demand for fitness for duty documentation from a cardiologist was, therefore, reasonable. Based on the foregoing, no rational juror could find that Defendant did not have good cause to require Plaintiff to provide fitness for duty documentation specific to the medical concern at issue before returning to work. Accordingly, summary judgment in favor of Defendant is appropriate.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion for Summary Judgment*

**(Rec. Doc. 17)** is **GRANTED**. Judgment shall be entered in favor of Defendant and

against Plaintiff.

New Orleans, Louisiana, this 10th day of October, 2018.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE